**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Frankie Williams, Kimberly Ord and Matthew Devine, on their own behalf and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Securitas Security Services USA Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 10-cv-07181<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER AND CORRECTIVE MAILING TO ADDRESS DEFENDANT'S IMPROPER COMMUNICATIONS WITH ABSENT CLASS MEMBERS**<br><br>**ORAL ARGUMENT REQUESTED** |

Martha J. Keon, Esq. (PA 207237)
Corinne Hays, Esq. (PA 308024)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267-402-3000 Telephone
267-402-3131 Facsmile
mkeon@littler.com; chays@littler.com

J. Kevin Lilly, Esq. (*pro hac vice*)
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
310-553-0308 Telephone
310-553-5583 Facsimile
klilly@littler.com

COUNSEL FOR DEFENDANT
SECURITAS SECURITY SERVICES USA
INC.

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................1

II.   FACTS ...................................................................................................2

      A.    Securitas Implemented The DRP Program In Response To Concepcion. .............2

      B.    The DRP Is Not Misleading; It Contains A Clear Collective Action
            Waiver And A Clear Explanation That Employees Can Opt Out Of The
            DRP. ...............................................................................................4

      C.    Employees Were Given 30 Days To Opt Out Of The DRP, And The Opt
            Out Process Is Easy, Fast, Confidential And Without Coercion. ...........................5

III.  ARGUMENT ..........................................................................................8

      A.    Plaintiffs' Request That The Court Order Securitas To Withdraw And/Or
            Invalidate The Dispute Resolution Program Would Violate The Federal
            Arbitration Act......................................................................................8

            1.    The FAA, as Construed by the Supreme Court in Concepcion,
                  Broadly Protects the Right To Enforce Agreements to Arbitrate
                  Under the Federal Arbitration Act..................................................8

            2.    The Order Requested by Plaintiffs Would Impermissibly
                  Constitute a Judicial Endorsement of Litigation Over Arbitration...........10

      D.    Securitas Could Not Have, Nor Did It, "Waive" The Right To Contract
            With Its Current Employees. ...................................................................11

      E.    Plaintiffs Have Not Established The Conditions Required For The
            Issuance of A Corrective Notice...............................................................13

            1.    There Has Been No Misconduct And There Are No Misleading
                  Statements In The DRP. ..........................................................14

            2.    Defendant's Offer Of A Second 30-Day Period To Opt Out Of The
                  DRP If Conditional Certification Is Granted Eliminates The Need
                  For Any Court Action At This Time. .............................................18

            3.    None Of The Cases Cited By Plaintiffs Warrant A Corrective
                  Notice Prior To Ruling On Conditional Certification. ...........................18

            4.    Any Notice That Might Be Issued Must Be Minimally Invasive.............21

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

IV.    CONCLUSION ....................................................................................................22

## I.   INTRODUCTION

Following a groundbreaking decision by the United States Supreme Court  in *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), Defendant Securitas Security Services USA Inc. implemented a nationwide Dispute Resolution Program ("DRP").  Drafted under the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the DRP provides a fair, inexpensive, and impartial arbitration system binding both on Securitas and its current employees.  As is now specifically allowed under the FAA, the DRP requires all disputes in arbitration be litigated individually, and not in a representative or class capacity.

In their Emergency Motion, Plaintiffs ignore *Concepcion* entirely, and request that the Court bar the DRP during the pendency of this uncertified FLSA collective action.  Because *Concepcion* is new, some of the issues in this motion have yet to be squarely addressed. However, the substantive and procedural remedies that plaintiffs seek —voiding of the DRP and sanctioning Securitas by requiring "corrective notice" for communications that were neither false nor misleading — are barred by longstanding U.S. Supreme Court and Third Circuit precedent. Under the FAA and *Concepcion*, courts must enforce arbitration agreements according to their terms, and cannot apply the law of unconscionability to disfavor arbitration provisions.  Under *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the Court must permit non-coercive communications by both parties during the pendency of a non-certified collective action.

Defendant recognizes that the Court has the responsibility to ensure that members of a putative collective action have the right to protection against coercive or misleading statements. No such conduct occurred in this case.  However, in order to assure the most fair and complete disclosure, *if* the Court were to grant conditional certification, Securitas will voluntarily agree to include in the Notice sent to current employees subject to the DRP program a second 30-day

period to opt out of the DRP in order to participate in this action.. *See infra* Sections III(C)(2) & (4). Such narrowly tailored relief will preserve the *status quo* while the Parties complete briefing and argue the pending motion for conditional certification, which is more logically resolved first. Settling the issue of who, if anyone, is a collective action member before addressing arbitration issues is the approach that has been endorsed by other courts addressing arbitration issues in the context of FLSA collective actions.

## II.   FACTS

### A.   Securitas Implemented The DRP Program In Response To *Concepcion*.

Before *Concepcion*, a number of courts had held that a provision in an arbitration agreement that barred class and representative claims might be held void as unconscionable, following the rationale articulated by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76 (2005) (holding in the context of a consumer contract that a class action waiver was unconscionable). Other courts, including the Third Circuit, had declined to follow the *Discover Bank* rule. *E.g. Gay v. CreditInform*, 511 F.3d 369, 392-95 (3d Cir. 2007) (enforcing a class action waiver clause in a consumer agreement); *Vilches v. Travelers Cos.*, 2011 U.S. App. LEXIS 2551, at *17-18 & n.4 (3d Cir. Feb. 9, 2011) (holding in a putative FLSA collective action that the class and collective action waiver was not substantively oppressive or unconscionable under New Jersey law).

On April 27, 2011, the United States Supreme Court held in *Concepcion* that the *Discover Bank* rule (that class action waivers in arbitration agreements are unconscionable) is preempted by the FAA because it applied the doctrine of unconscionability in a way that disfavors arbitration. *Concepcion*, 131 S.Ct. at 1750-53. The Court reasoned that under longstanding precedent, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1745-46 (citing

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

On May 11, 2011, Securitas senior management approved the implementation of the DRP. (McDargh Decl., ¶4).[1]  As of that date, Securitas had been for many years a defendant in various putative class actions and/or collective actions around the country.  (Lilly Decl., ¶¶2, 7-8).[2]  In the *Holland* case pending in Los Angeles County Superior Court, a motion for certification as class action had been filed on February 18, 2011, and as of May 11, 2011, had been pending for almost three months.  (Lilly Decl., ¶3).  Here in Pennsylvania, this case had been pending since December 10, 2010; however Plaintiffs had not filed their motion for conditional certification as of May 11, 2011, and did not do so until June 1, 2011.  (Docket No. 18).

During the week of June 14, 2011, Securitas began implementing the DRP, as part of a nationwide roll-out.  (McDargh Decl. ¶10).  The DRP applies to all currently employed non-union employees nationwide, who do not opt out.  (*Id.*, ¶4).  Therefore, for purposes of this case, the DRP only affects the portion of the putative Pennsylvania collective action members who are currently employed by Securitas.

The DRP is intended to provide a prompt, informal and inexpensive alternative for disputes arising out of employment.  (*Id.,* ¶4 & Ex. A, at 1, ¶1).  It is bilateral, binding both SUSA and participating employees to arbitrate disputes.  (*Id.*, Ex. A, at 1, ¶1).  It provides for resolution of disputes by a neutral Arbitrator mutually selected by the parties near the residence of the employee.  (*Id.*, Ex. A, at 1, ¶2).  The DRP contains a collective action waiver that is stated

---

[1] The Declaration of Jacqueline Nicole McDargh, dated July 6, 2011 ("McDargh Decl.") is filed herewith.
[2] The Declaration of J. Kevin Lilly, dated July 6, 2011 ("Lilly Decl.") is filed herewith.

in bold print: "**there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action ("Class Action Waiver")**". (*Id.*, Ex. A, at 2, ¶4) (bold in original). *All* substantive rights that the parties have are preserved, and employees may receive the same remedies available in court, including all relief available under the Fair Labor Standards Act ("FLSA"). (*Id.*, Ex. A, at 1-2, ¶¶ 1, 4-6). The right to attorney's fees, and the obligation to pay costs and fees is no different than in court or as required under the law. (*Id.*, Ex. A, at 2, ¶5).

**B.     The DRP Is Not Misleading; It Contains A Clear Collective Action Waiver And A Clear Explanation That Employees Can Opt Out Of The DRP.**

The DRP is intended to apply to the fullest extent permissible under the Federal Arbitration Act ("FAA"). (McDargh Decl., ¶6). Tracking the language in Section 2 of the FAA, it applies to claims subsequently arising from or related to employment, as well as to apply to existing claims, unless the employee was already party to an existing lawsuit. (McDargh Decl., Ex. A, at 2, ¶7). To clarify this intent, and to provide fair notice, the DRP lists putative class action and putative collective action cases currently on file, separated out by the state in which the action is pending (including this case pending in Pennsylvania), and instructs that if the employee is a named plaintiff or has joined a class or collective action, the DRP does not apply to him or her:

> This Agreement is intended broadly to apply to all controversies hereafter arising out of or related to your employment relationship with the Company as well as an agreement to submit to arbitration any existing controversy arising from or related to your employment as is permitted under Section 2 of the Federal Arbitration Act. In some cases, claims have been made in court (non-arbitration) litigation on behalf of Company employees in which those employees desire to represent claims of other employees in class, collective or other representative actions (referred to as "Actions"). If you are a named party plaintiff, or have joined as a party plaintiff this Agreement shall not apply to those Actions, and you may continue to participate in them without

regard to this Agreement. If you have retained counsel with respect to any claim that may be subject to this agreement you should consult that counsel.  You may consult private counsel with respect to any aspect of this Agreement.

This Agreement, however, shall apply to all Actions in which you are not a plaintiff or part of a certified class.  The Company is aware of the following Actions in which class or representative claims have been alleged, which generally involve employee claims for unpaid wages:

. . . .

Pennsylvania:   Frankie Williams and Kimberly Ord, filed 12/10/2010, USDC, Eastern District of Pennsylvania Case No. 2:10-cv-07171-HB

(*Id.*, Ex. A at 2-3, ¶7).

For employees who are not joined as parties to any litigation, the DRP provides that employees may opt-out as follows:

If you are not a named plaintiff, have not joined as a plaintiff or are not part of a certified class in any of these Actions but would like to potentially participate in one or more of the Actions as a class member or plaintiff, you may opt out of this Agreement by following the procedure set forth in Section 9,[3] below. By not opting out of this Agreement as set forth in Section 9 below, however, you will be giving up the right to represent others in litigation and the right to participate in any class, collective or representative action in a court of law, including the Actions enumerated above in which you are not a named plaintiff, have not joined as a plaintiff or are not part of a certified class.   If you choose not to opt out of this Agreement, you will be able to arbitrate whatever individual claims you have against the Company.  Whatever you decide, you will not be retaliated against,

(*Id.*, Ex. A, at 3, ¶7).

### C.   Employees Were Given 30 Days To Opt Out Of The DRP, And The Opt Out Process Is Easy, Fast, Confidential And Without Coercion.

The DRP was distributed to non-union employees nationwide beginning June 14, 2011.

---

[3] Exhibit A contained a typo – the "9" should be "8," which was corrected in Exhibit B. (McDargh Decl., ¶4).

(McDargh Decl., ¶10).  SUSA activated a 1-800 telephone number for employees to call with

any questions about the program and to request to opt out of the program.  (*Id.*, ¶11).  All an

employee needs to do to opt out of the arbitration policy is to place one brief call to the 1-800

telephone number within 30 days of receipt of the DRP.  (*Id.*, ¶12 & Ex. A, at 3, ¶8).  There are

no other requirements, or paperwork to complete.  (*Id.*).  The DRP explains that there will be no

adverse employment action if an employee decides to opt out.  (*Id.*).  The DRP also explains that

if the employee does not opt out within 30 days, continuing employment constitutes mutual

acceptance of the DRP.  (*Id.*).

Company managers are not provided information identifying anyone who has asked a

question or chosen to opt out of the arbitration agreement.  (*Id.*, ¶13).  As of July 4, 2011, 1,549

employees called the 800 number and opted out, including 64 employees in Pennsylvania.  (*Id.*,

¶14).  As of the same date, 200 employees nationwide (including 9 in Pennsylvania) called the

800 number and requested a call back so that their questions could be answered.  (*Id.*).  The

Company's responses to these questions, the substance of which has been placed in a recorded

message on the 800 line, are as follows:

**Why did I receive this policy?**

•      Securitas recently implemented a Dispute Resolution
policy. All active Securitas employees in the United States
received a copy of this policy.

**What is this policy?**

•      The policy requires employee disputes be resolved
individually, through arbitration, rather than in court, or as a class.

**What is arbitration?**

•      It's a way to settle a legal dispute outside of court. An
impartial third party (who is trained and licensed) makes a final
decision about the issue and both parties are bound by that
decision.

**What does the opt-out provision mean to me?**

•      If you do not wish to be part of arbitration you can opt-out, by pressing #.  You have 30 days to decide.

•      I opted out but now I've read the policy and changed my mind…can I do that?

•      Yes, press # and let the agent know you'd like to be taken off of the opt-out list.

**Why am I being asked to sign the form?**

•      Your signature on the form, serves simply to acknowledge that you received the policy. However, you are not required to sign it.  No negative action can or will be taken against you for failure to sign.

(McDargh Decl., ¶15-16).

As stated above, the DRP advises those employees who have retained counsel with respect to any claim to consult with counsel, and notes that others may consult with counsel as well.  (*Id.*, Ex. A at 2, ¶7).  Paragraph 9 the DRP reiterates Company policy forbidding retaliation, including for exercising rights under the DRP:

> It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

(*Id.*, Ex. A at 4, ¶9).  The fact that recipients of the DRP are exercising their right to confer with counsel is evidenced by Plaintiffs' representation that the DRP was brought to their attention by a Securitas Employee.  (Pl. Mem. at 1, 3).  Indeed, given the weakness of Plaintiffs' motion for conditional certification, the roll out of the DRP was a boon to Plaintiffs' counsel, who are being contacted by employees who learned of the existence of the case through the DRP who would never have otherwise received notice of this action upon the denial of conditional certification.

7

The DRP does not require an Employee signature to be effective, and no employee is requested to submit to the agreement by signing it, and no employee has been required to sign anything. (McDargh Decl., ¶¶9, 17-18 & Ex. A, at 5). The Company has requested employees to acknowledge receipt of the DRP by signing the acknowledgement of receipt attached to the DRP. (*Id.*).

## III.   ARGUMENT

### A.   Plaintiffs' Request That The Court Order Securitas To Withdraw And/Or Invalidate The Dispute Resolution Program Would Violate The Federal Arbitration Act.

The Emergency Motion requests that the Court do far more than simply ensure that potential members of a class are neither coerced nor deceived. Under the guise of "corrective notice," plaintiffs request that the Court <u>bar distribution of an agreement to arbitrate</u>. (Pl. Mem. at 1, 2, 8, 10). In effect, Plaintiffs desire to enlist the Court's assistance by eliminating an employee's choice to accept arbitration and divert claims into this litigation.

Plaintiffs impermissibly ask the Court to endorse litigation over arbitration. Such an endorsement would violate *Concepcion,* which prohibits contractual interpretations that discriminate against the favored remedy of arbitration. It would also exceed the permissible scope of judicial intervention in the collective action notice process under the standard set forth in *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989).

#### 1.   The FAA, as Construed by the Supreme Court in *Concepcion,* Broadly Protects the Right To Enforce Agreements to Arbitrate Under the Federal Arbitration Act.

The Federal Arbitration Act ("FAA") was enacted "in response to widespread judicial hostility to arbitration agreements." *Concepcion,* 131 S.Ct. at 1747. It requires courts to enforce arbitration agreements, reflecting the federal policy strongly favoring arbitration as a method of alternative dispute resolution. 9 U.S.C. § 1, *et seq*  Section 2 of the FAA provides as follows:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *Concepcion*, 131 S.Ct. at 1748 ("[T]he 'principal purpose' of the FAA is to 'ensure[e] that private arbitration agreements are enforced according to their terms.'"). The Emergency Motion neither cites nor discusses *Concepcion*. However, it is impossible to decide on the remedy Plaintiffs demand—an order holding an arbitration agreement under the FAA to be unenforceable—without understanding the breadth of the Supreme Court's decision, and how the Court expressly discussed and compared arbitrations under the FAA to class action litigation.

*Concepcion* involved an agreement to arbitrate disputes in a consumer credit card agreement. Claiming that the provision in the agreement that excluded class or representative claims was unconscionable, plaintiffs opposed motion to compel arbitration under the FAA. Both the district court and the Ninth Circuit held the agreement to be void as unconscionable under California's *"Discover Bank"* rule, "because AT&T had not shown that bilateral arbitration adequately substituted for the deterrent effect of class actions." *Concepcion*, 131 S.Ct. at 1745.

The Supreme Court struck down the *Discover Bank* rule "because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 1753 *(citing Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The central holding in *Concepcion* is that agreements to arbitrate must be enforced according to their terms: "We have described this provision as reflecting both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S.Ct. at 1745 (citations omitted).

9

In Pennsylvania, employers have the right as a matter of contract to change company policies, and continued employment is sufficient consideration for a new policy distributed following commencement of employment. *E.g. Brennan*, 282 Fed. Appx. at 135 (employer's distribution of arbitration agreement via interoffice mail, which was later reaffirmed in the employee handbook and via a memorandum to all employees was valid and enforceable).

Any order by the Court voiding the DRP would substantively deprive Securitas and its employees to agree to a valid arbitration agreement under the FAA.  However, the only ground under which such an agreement may be held void is under the statute's "savings" provision by which arbitration agreements may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Concepcion*, 131 S.Ct. at 1745. Such provisions may not, however be applied in such a way as to disfavor arbitration. *Concepcion*, 131 S.Ct. at 1747.  Thus, although the Court has substantial authority to manage the litigation before it, the Court should not exercise this authority to rewrite the contractual arrangements permitted under Pennsylvania law and favored under federal law.

### 2.    The Order Requested by Plaintiffs Would Impermissibly Constitute a Judicial Endorsement of Litigation Over Arbitration.

Federal courts unquestionably have the authority to issue orders to protect the rights of potential parties during collective actions; however, courts must avoid the appearance of judicial endorsement of the merits of the action:

> Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.   In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.   To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.

*Id.* at 174.

Currently before the Court is Plaintiff's motion for conditional certification. Plaintiffs' motion is nearly devoid of evidence, and what evidence is presented tends to show that even Plaintiffs' claims differ from each other and that Securitas' only generally-applicable policy (to pay for all time worked -- is lawful. By voiding the DRP, the Court would deprive employees who desired to pursue their claims a fast and inexpensive arbitral remedy.

As discussed above, such an action is completely unnecessary. *If* notice is ordered in this case, and *if* any particular employee wishes to challenge the enforceability of the DRP under the applicable law governing rescission of contracts, that employee may do so. FAA § 2. In this case, the appropriate means to address plaintiff's *substantive* concerns over the DRP are to address them as part of the conditional certification process.

This approach has been taken in *Davis v. NovaStar Mortgage, Inc*, 408 F.Supp.2d 811 (W.D. Mo 2005). There, the district court granted conditional certification and notice to the entire putative class even though the defendants asserted most, if not all, of the purported class signed arbitration agreements. The court stated it would consider arbitral issues after the identities of class members were known, or if the defendant moved to compel arbitration.

All of the issues surrounding arbitration, *including* plaintiffs' claims that members of the class should not be bound because they were given insufficient notice, can be resolved in substantive proceedings before this court, such as in a motion to compel arbitration. E.g. *Krstic v. JR Contracting & Environmental Consulting*, 2011 U.S. Dist LEXIS 28121 (D. N.J. 2011) (staying case and referring to arbitration the claim that the arbitration agreement was unconscionable).

### D.    Securitas Could Not Have, Nor Did It, "Waive" The Right To Contract With Its Current Employees.

Plaintiffs also argue that because Securitas defended itself in this case in the six months

before *Concepcion* was decided, the company cannot *change its policies to offer arbitration.*   (Pl. Mem. at 9-10).   This argument is illogical on its face:   employers are not barred from changing policies in response to changes in the law because related litigation exists.   The case cited by Plaintiffs does not stand for this proposition.   In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F. 3d 388 (7th Cir. 1995), the Court barred the assertion of an already-existing arbitration policy because the defendant had chosen to litigate the case almost to trial before asserting a pre-existing arbitration agreement.   In *Cabinetree* itself the Court notes that a waiver of a right to arbitrate is only presumptive.

> We have said that invoking judicial process is presumptive waiver. For it is easy to imagine situations — they have arisen in previous cases — in which such invocation does not signify an intention to proceed in a court to the exclusion of arbitration. Miller 391*391 v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 854 (11th Cir. 1986) (per curiam); Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 641-42 (7th Cir. 1981). . . . . The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed. We need not try to be exhaustive. It is enough to hold that while normally the decision to proceed in a judicial forum is a waiver of arbitration, a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded

*Id.* at 390-91.   Certainly the implementation of a new arbitration agreement, which did not exist before, in response to groundbreaking new law, constitutes a clear circumstance in which the presumptive waiver would not apply.

Nevertheless, Plaintiffs argue that the mere filing of a complaint with class action allegations prohibits Securitas from implementing a dispute resolution program with its current employees.   (Pl. Mem. at 8).   This argument would rewrite Section 2 of the FAA, which provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, <u>or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal</u>, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

In this case, Securitas (1) implemented a Dispute Resolution Program for all current employees nationwide; (2) following a landmark United States Supreme Court.  With respect to already-existing litigation, Securitas: (1) excluded all current plaintiffs from the DRP; (2) referenced, by title, case number, and filing date, the disputes of which it was aware that would be subject to any class action waiver; and (3) provided a 30-day opt-out period during which plaintiffs who desired to join the litigation could do so.  Under these circumstances, to hold that Securitas no longer has the right to implement its DRP because potential class action claims exist effectively prevents it from adopting the DRP at all.

### E.   Plaintiffs Have Not Established The Conditions Required For The Issuance of A Corrective Notice.

Communication with putative collective action members is governed by the standard set forth in *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989).  In *Sperling*, the plaintiff filed a charge of discrimination on behalf of himself and others similarly situated with the Equal Employment Opportunity Commission and with the assistance of counsel formed a group and mailed a letter under its letterhead to 600 employees who had been identified as possible collective action members seeking consents to joint a collective action in federal district court in New Jersey. *Id.* at 168.  Hoffman-LaRoche contested the consents on the ground that the solicitation had been misleading. *Id.* The district court declined to invalidate the consents and ordered that a Court-approved notice of the case be sent to all putative collective action

members.

On appeal, the Third Circuit and Supreme Court affirmed, holding that the Court has the discretion to implement the Fair Labor Standards Act's collective action provision, 29 U.S.C. §216(b), as incorporated into the Age Discrimination and Employment Act, by facilitating notice to potential collective action members. *Id.* at 169-70. The Court held that court-approved notice was appropriate to counter the potential for misleading communications, but that courts "must be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 487-91. (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)).

### 1. There Has Been No Misconduct And There Are No Misleading Statements In The DRP.

Nothing in the DRP is false or misleading. The policy itself correctly identifies this case and generally describes the claims at issue: "The Company is aware of the following Actions in which class or representative claims have been alleged, which generally involve employee claims for unpaid wages." The notice provides an opt-out provision with 30 days to decide. To date, hundreds of employees have exercised this right. It is not illusory. Indeed, Plaintiffs' counsel, Jon Tostrud and Ryan Steffan, represent the plaintiffs in the *Holland* case pending in Los Angeles County Superior Court, in which the plaintiffs there forthrightly admitted that "there were not any misstatements in the arbitration agreements distributed by Defendants." (Lilly Decl., Ex. A at 4).

While Plaintiffs claim that the DRP contains "incomplete and misleading statements about Class members legal rights, the purpose and effect of the Agreement and the procedures for opting-out of the Agreement," (Pl. Mem. at 2), they fail to specify what is incomplete or misleading about the language used or provide any evidence from anyone who was mislead or

confused.  Nor do Plaintiff's other criticisms of the DRP withstand close scrutiny.

First, Plaintiffs assume that collective action members will "fail to understand the Agreement or the instructions for opting out." (Pl. Mem.. at 1-2).  A more reasonable assumption would be that security officers tend to be observant, detail-oriented and skeptical, and Plaintiffs fail to provide any declarations from anyone claiming that they did not understand their rights.  On the contrary, Plaintiffs admit on the first page of their motion that a current employee contacted them to tell them about the DRP.  (Pl. Mem. at 1).

Second, Plaintiffs note that the DRP "consists of more than three, single-spaced pages of legal jargon, technical language and internal cross-references, all of which make the Agreement difficult to understand." (Pl. Mem. at 2).  Plaintiffs fail to provide any examples of the legal jargon or technical language.  Further, there is only one cross-reference in the DRP, on page 3, paragraph 7, which describes the right to opt out of the DRP and points to paragraph 9 below for how to opt out.  As Plaintiffs correctly point out (Pl. Mem. at 4), "9" was a typo that has since been corrected to "8." (McDargh Decl., Ex. B, at 3, ¶7).  The mistake is obvious and there are only 3 more paragraphs "below," and the opt out process is readily apparent in paragraph 8. Plaintiff's characterization of this as "[t]he most glaring organization defect" only underscores the weakness of their objections to the DRP.  As to the length of the DRP, Plaintiffs simultaneously complain that the DRP contains insufficient disclosures.  (Pl. Mem. at 3).

Third, Plaintiffs claim that the DRP is vague and confusing.  (Pl. Mem. at 4).  Again, Plaintiffs introduce no evidence from anyone who was confused.  Plaintiffs complain that whether an employee has to pay for the cost of the arbitration depends on the law that applies. (Pl. Mem. at 4).  This is a correct statement of the law.  As to the claim that no rules are specified, the DRP plainly describes the dispute resolution process with specific rules.  Claims

may be made in writing by and or mail.  (McDargh Decl., Ex. A, at 2, ¶3).  Statutes of limitations are the same as in Court.  (*Id.*).  Arbitrators are selected by mutual consent or, if the parties do not agree, the arbitrator may be retired federal state or judicial officers who reside in the jurisdiction or either party can apply to a court of competent jurisdiction where the arbitration will take place to appoint one.  (*Id.*, at 1, ¶2).  The proceeding will be held within 45 miles of the employee's home.  (*Id.*).  The agreement provides for discovery and dispositive motions.  (*Id.*, at 2, ¶4).[4]

Fourth, Plaintiffs complaint that the DRP is "self-executing, and applies regardless of whether a Class member signs it or agrees with it."  (Pl. Mem. at 2, 3).  The DRP explains how an employee can opt out if they do not agree with the DRP.  The DRP also explains that signing it only signifies receipt, not agreement.  (McDargh Decl., Ex. A at 5) ("By signing below, I am acknowledging receipt...").  The signature and date on the Acknowledgment page is evidence of the date of receipt, which triggers the 30-day opt out period.   Further, an employer may put an arbitration program in place and have it be enforceable by virtue of acknowledgment of receipt and continued employment.  *E.g. Brennan v. CIGNA Corp.*, 282 Fed. Appx. 132, 135 (3d Cir. 2008) (employer's distribution of arbitration agreement via interoffice mail, which was later reaffirmed in the employee handbook and via a memorandum to all employees was valid and enforceable).

Fifth, Plaintiffs claim that the DRP "seeks to function retroactively, as a release of claims that are already pending."  (Pl. Mem. at 2).  The DRP by its express terms does *not* apply to any current employee who is already a party plaintiff or collective action or class action member.  (McDargh Decl., Ex. A at 2, ¶7).  Further, all employees have the right to opt out of

---

[4] Plaintiffs' claim that the only "hard-and-fast rule" in the DRP is that "there can be no class actions" (Pl. Mem. at 4), is plainly not true.

the DRP to preserve their right to participate in a collective action should one be certified, or for any other reason.  In any event, Defendant stipulates to an additional 30-day period to opt out of the DRP if a collective action were certified in this case.

Seventh, Plaintiffs argue that the DRP "frustrates the true purpose of an arbitration agreement by requiring the duplicative and wasteful expenditure of time and resources in various forums" because some claims will necessarily proceed in court and others in arbitration.  (Pl. Mem. at 2).  This would only be a concern if the putative collection action members were similarly situated.  As demonstrated in Defendant's opposition to conditional certification, they are not, and Plaintiffs have failed to demonstrate that the proof necessary to resolve their claims is common.[5]  Administering this case as a collective action would be the only truly wasteful expenditure of time and resources given the divergent facts that will have to be explored to resolve each putative collective action members' claims.

Finally, Plaintiffs claim that the DRP was an "improper communication with the Class members" that divests the Court of jurisdiction over the case.  (Pl. Mem. at 2).  If conditional certification is granted, Defendant has agreed to provide a second 30-day period to opt out of the DRP to ensure a second opportunity to any employee to opt into this lawsuit, thus preserving this Court's jurisdiction.

In sum, Plaintiffs' criticisms of the DRP are without foundation, and any such arguments can and should be made either before the Court or an Arbitrator at a later juncture under the standards enunciated in *Concepcion*.

---

[5] Plaintiffs state repeatedly in their papers that the fact that Defendant rolled out an arbitration program to current employees proves that the putative collective action members are similarly situated (Pl. Mem. at 1, n.1; 3 n.2), but fail to explain why this is so.  This assertion makes no sense whatsoever.

> **2.      Defendant's Offer Of A Second 30-Day Period To Opt Out Of The DRP If Conditional Certification Is Granted Eliminates The Need For Any Court Action At This Time.**

As offered to Plaintiffs in an effort to resolve their Emergency Motion, Defendant will stipulate to a second 30-day opt-out period from the Dispute Resolution Program, were Plaintiffs to prevail on their motion for conditional certification.  (See Ex. B hereto).  Resolving the conditional certification motion first is the most sensible solution.  Plaintiffs' motion for conditional certification is very weak (supported only by threadbare declarations of the three named Plaintiffs) and denial of the conditional certification motion moots the Emergency Motion, as none of the named Plaintiffs is a current employee subject to the Dispute Resolution Program.

This resolution is consistent with the approach taken by other courts in addressing arbitration agreements in the context of putative FLSA collective actions, as the collective action members have to take affirmative action to join the case and only a subset of putative collective action members will ultimately opt in if conditional certification is granted.  *E.g. Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp.2d 811, 817-18 (W.D. Mo. 2005) (deferring arbitration issues until after conditional certification is granted and the identities of class members known or the defendant moved to compel arbitration) (citing *Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807, 808 (S.D. Tx. 2003) (refusing to address arbitration issues in ruling on the motion for conditional certification)).  Accordingly, no court action is needed at this time other than to resolve the pending motion for conditional certification.[6]

> **3.      None Of The Cases Cited By Plaintiffs Warrant A Corrective Notice Prior To Ruling On Conditional Certification.**

Plaintiff's brief inexplicably starts off with a citation to Rule 23(d); however, this case is

---

[6] Plaintiffs' claim that Defendants has waived the right to arbitrate (Pl. Mem. at 9-10) is incorrect.  It was preserved in Defendants' Answer.

not a class action.  All of the cases cited by Plaintiffs are Rule 23 cases, except for one passing reference to *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  None of the cited cases warrants a corrective notice on the facts at issue here.  In fact, several of the cited cases (*Georgine* and *In re Currency Conversion*) actually support Defendants' proposal to resolve the Emergency Motion by providing a second opportunity to opt out if the court grants conditional certification:

- *In re School Asbestos*, 842 F.2d 671 (3d Cir. 1988) (Pl. Mem. at 5) (in a Rule 23 class action, reversing the trial court's injunction of defendant's dissemination of a booklet to schools via a third party presenting their views on asbestos in buildings).

- *Dondore v. NGK Metals Corp.*, 152 F. Supp.2d 662 (E.D. Pa. 2001) (Pl. Mem. at 5) (holding that defense lawyers in federal court individual action had to issue subpoenas to interview witnesses who were putative class members in a state court class action under class action and ethical rules which in Pennsylvania prohibit contact with putative class members; no such rule applies to putative collective action members who are not represented by counsel until they opt in).

- *Georgine v. Amchem Prods. Inc.,* 160 F.R.D. 478 (E.D. Pa. 1995) (Pl. Mem. at 5) (similar to the relief offered by Defendant here, the court ordered putative Rule 23 class members who opted out of a settlement to be reinstated to the Rule 23 class following misleading communications sent by attorneys who objected to the settlement of the putative class action, and invited them to opt out again if they desired).

- *Haffer v. Temple Univ. of Commonwealth System of Higher Education*, 115 F.R.D. 506 (E.D. Pa. Mar. 3, 1987) (Pl. Mem. at 5) (providing for corrective notice in a Rule 23 class action when Defendant's coaching staff engaged in misleading communications including letters and in person meetings with female athletes urging them to opt out of the suit).

- *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) (Pl. Mem. at 6) (invalidating Rule 23 opt outs initially filed following coercive conduct by the newspaper).

- *Great Rivers Coop of Southeastern Iowa v. Farmland Indus., Inc.*, 59 F.3d 764 (8th Cir. 1995) (Pl. Mem. at 6) (in a Rule 23 class action, declining to order a newspaper to print the plaintiff's side of the case following the defendant's opinion piece in the newspaper regarding the class action litigation and its view of the case).

- *Kleiner v. First National Bank*, 751 F.2d 1193 (11th Cir. 1985) (Pl. Mem. at 6) (in

Rule 23 class action, finding solicitation of op-outs from a class action suit to be coercive and to have interfered with the court's power to supervise the suit).

- *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005) (Pl. Mem. at 7) (analyzing the bank's misleading statements to putative class members under Rule 23).

- *Pollar v. Judson Steel Corp.*, 1984 U.S. Dist. LEXIS 19765 (N.D. Cal. Feb. 3, 1984) (granting TRO to enjoin published notice that failed to disclose the plaintiffs' Rule 23 class action and attempting to solicit information from class members who are represented by class counsel).

- *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 243-245, 249-56 (S.D.N.Y. 2005) (Pl. Mem. at 8) (in a Rule 23 class action in which the defendant banks rolled out an arbitration agreement during the litigation, deferring the issue of the arbitrability of claims of putative class members until ruling on Rule 23 class certification, denying class certification as to certain defendant banks which mooted the arbitration issue as to them, and as to the remaining banks, declining to apply an arbitration agreement, where (unlike here) the bank misled putative class members by failing to disclose the existence of the class action).[7]

- *Bublitz v. E.I. DuPont de Nemours & Co.,* 196 F.R.D. 545, 546-550 (S.D. Iowa 2000) (Pl. Mem. at 8) (holding in a Rule 23 class action that defendants may discuss settlement offers with individual class members provided that communications are not false or misleading and that no coercion is used, declining to require pre-approval by the Court or Plaintiffs as requested by Plaintiffs, but holding that minimal protections were in order including that the communications must be in writing and copied to the Court and Plaintiff's counsel and any offer to waive rights must give the putative class member 10 days to respond).

---

[7] The order in *Currency Conversion*, which was decided before *Concepcion*, also misstates the law. First, the court ordered that the defendants were free to modify their cardholder agreements, but only insofar as the modification "do not impair the integrity of this litigation." *Id.* at 255. Such a limitation would squarely violate the holding in *Concepcion* that courts may not interpret state laws of unconscionability in a way that disfavors arbitration. Secondly, the Court in *Currency Conversion* incorrectly attempts to limit the United States Supreme Court's holding in *Gulf Oil v. Bernard*, 452 U.S. 89 (1981), by ruling that this free speech right only applies to plaintiffs. *Id.* at 254. This unique and incorrect holding has been heavily criticized in *Austen v. Catterton Partners*, 2011 U.S. Dist. Lexis 27469, *21-22 (D. Conn. 2011) (rejecting *Currency Conversion* and permitting only limited restrictions on speech, and only in the presence of clear evidence of abuse, noting that "named plaintiffs and their counsel do not always act in the best interests of absent class members, and not all defendants and defense counsel engage in abusive tactics," and "courts thus must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary.").

- *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Texas 1994) (Pl. Mem. at 9) (in Rule 23 class action, limiting competitor's communications regarding the litigation with potential class members following its urging potential class members not to participate in the lawsuit).

None of these cases support the need for any corrective notice at this time.  Indeed, to provide

notice now would enable Plaintiffs to solicit new collective action members when the Court is

about to rule on conditional certification and it is clear based on their moving papers in support

of conditional certification that Plaintiffs cannot meet the "similarly situated" standard to certify

this case as a collective action.

### 4.    Any Notice That Might Be Issued Must Be Minimally Invasive

When it issued the DRP, Securitas offered a *voluntary* arbitration agreement to

employees in order to ensure that the agreement was both voluntary and enforceable to the extent

permissible under the FAA.  Securitas was not required to offer an opt-out provision at all.

Nevertheless, in an effort to remove any doubt concerning the enforceability of the DRP,

Securitas will stipulate to additional notice and opt-out relief, provided such relief is narrowly-

tailored and has minimal effect on the DRP's substantive terms.  Specifically, Defendant

proposes that the Court proceed to consider Plaintiffs' motion for conditional certification.  If

conditional certification is denied, then there is no need at all to consider the DRP's effect on this

litigation except as to persons who later attempt to join.

In the event that the Court grants conditional certification, then notice will issue in any

event.  As part of that notice, Securitas would agree to a second opt out period for 30 days in

which employees who wish to join this litigation under Rule 216(b) may do so.  Any employees

who join under those terms will be treated as a "named party plaintiff" under Paragraph 7 of the

DRP, which states as follows: "If you are a named party plaintiff, or have joined as a party

plaintiff this Agreement shall not apply to those Actions, and you may continue to participate in

them without regard to this Agreement."

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' Emergency Motion should be denied.

Respectfully submitted,


/s/
_____
Martha J. Keon, (PA #207237)
Corinne Hays, (PA #308024)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321

Attorneys for Defendant
Securitas Security Services USA Inc.

Date: July 7, 2011