IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

FRANKIE WILLIAMS, KIMBERLY ORD
and MATTHEW DEVINE, on their own
behalf and for all others similarly situated,

   Plaintiffs,

  v.

SECURITAS SECURITY SERVICES USA INC.

   Defendant.

---

Civil Action No. 10-cv-07181

Hon. Harvey Bartle, III

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF THE
SETTLEMENT AND DISMISSING THE CASE**

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..................................................................................................................1
II. FACTUAL BACKGROUND..................................................................................................1
    A. The Parties ......................................................................................................................1
    B. Procedural History..........................................................................................................1
    C. Discovery and Investigation Regarding Claims Alleged ................................................2
    D. The Parties Dispute Whether New Hire Orientation Was Compensable. ......................3
    E. The Parties Reached a Settlement. ..................................................................................4
        1. Back Wages ($100,000.00 to Class Members).........................................................4
        2. Payments to Named Three Plaintiffs ($15,000) .......................................................7
        3. Plaintiff's Attorneys' Fees and Costs ($125,000). ....................................................7
    F. The Settlement ................................................................................................................8
    G. After Notice No Objections Or Requests For Exclusion Were Received. .....................8
III. LEGAL AUTHORITY............................................................................................................9
    A. The Court Should Approve The Settlement Of Plaintiffs' FLSA Claims Because The Settlement Is Fair And Reasonable. .................................................9
    B. The Court Should Approve The Settlement Of Plaintiffs' State Law PMWA Claim Under F.R.C.P. 23(e) Because It Is Fair, Reasonable And Adequate. ..................................................................................................................12
IV. CONCLUSION .....................................................................................................................16

I.  **INTRODUCTION**

The Court should grant final approval of the Parties' Settlement Agreement because it is fair, reasonable and adequate under the governing legal standards, provides relief to the Participating Class Members and following preliminary approval and notice to the class, no objections were filed.

II. **FACTUAL BACKGROUND**

    A.  **The Parties**

Securitas provides security officer services to a wide variety of clients in many different settings. Securitas has ten administrative offices in Pennsylvania organized into three areas: Philadelphia (Philadelphia and Conshohocken), Mid-State (Harrisburg, Lancaster, Scranton, Allentown, and Munsey), and Pittsburgh (Pittsburgh, Altoona and Erie).

Plaintiff Frankie Williams was employed out of Securitas' Conshohocken office from March 2007 to January 2010. Mr. Williams was stationed at a Motorola corporate campus in Horsham, Pennsylvania during his entire employment.

Plaintiff Matthew Devine was employed out of Securitas' Harrisburg office from June 2008 to April 2009, and was stationed at eight different worksites during this time period.

Plaintiff Kimberly Ord was employed out of Securitas' Altoona office from January 2009 to May 2010, and was stationed at three worksites in the Altoona area during her employment.

    B.  **Procedural History**

On or about December 10, 2010, Plaintiffs Frankie Williams and Kimberly Ord filed this action in the United States District Court for the Eastern District of Pennsylvania (the "Court"). In the Complaint, Plaintiffs claimed that they and other similarly situated current and former security officers were required to work off-the-clock in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, in connection with (1) new hire orientation, (2) post-hire

1

training, (3) shift changes at their worksites, and (4) maintaining their company-issued uniforms in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*. Defendant denied the allegations set forth in the Complaint.

On or about February 22, 2011, Matthew Devine and Joseph Maguire filed notices of consent to opt in to the putative collective action. On March 15, 2011, Plaintiffs filed a First Amended Complaint, adding opt-in Matthew Devine as a Plaintiff. Defendant denied the allegations set forth in the Amended Complaint.

During June 2011, Defendant rolled out a dispute resolution program nationwide. On July 13, 2011, the Court held that the dispute resolution program does not apply to this case and required Defendant to send a notice to all putative collective action members who were current employees so informing them.

On August 11, 2011, notices of consent to opt in to the putative collective action were filed by Joseph Stayduher and Lindsay David.

On August 17, 2011, the Court ruled on Plaintiffs' motion for conditional certification, certifying only Plaintiffs' new hire orientation claim. With the case so narrowed, the Parties postponed sending out any notice to those who had attended new hire orientation without pay to pursue settlement discussions.

To facilitate settlement discussions, the Parties entered into a tolling agreement effective as of October 15, 2011 as to claims alleged in the Complaint in this case, and as a result the Class Period for the new hire orientation claim is October 15, 2008 to January 7, 2010, when Securitas alleges it began paying for new hire orientation.

### C.   Discovery and Investigation Regarding Claims Alleged

In the course of this action and in preparation for settlement discussions, the Parties conducted significant investigation of the facts and law regarding the new hire orientation claim

2

and the claims of the Named Plaintiffs, including: (a) the exchange of information pursuant to formal and informal discovery, (b) interviews of potential witnesses, (c) review of personnel, payroll and training records and Securitas' policies and procedures, (d) the deposition of Defendant's Regional Vice President of Human Resources, and (e) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims in the Action.

### D. The Parties Dispute Whether New Hire Orientation Was Compensable.

The Parties dispute whether Securitas' new hire orientation was compensable. During the time period at issue, Defendant alleges its new hire orientation was the last phase of its process for screening security officer applicants. Defendants allege the orientation consisted of instructional videos, handling hazardous materials, and in some instances, safe driving; multiple choice tests to assess the individual's comprehension of the material; the state-mandated fingerprinting process; filling out paperwork; and being issued uniform items, amongst other things.

Plaintiffs claim that new hire orientation was compensable time under the FLSA, and should have been paid. Plaintiffs further argue that the failure to pay for the time prior to January 2010 caused their wages to fall below minimum wage or pushed them into overtime (which was not paid) during the workweek at issue, in violation of the FLSA.

Defendant disputes that it was required to pay individuals for new hire orientation under the applicable FLSA regulations. In Defendant's view, the process of watching instructional videos, being tested on them and filling out paperwork was the final part of Securitas' screening process – an important part, as being a security officer involves sitting for long periods, being able to concentrate and be alert without falling asleep, and filling out reports and forms accurately. Defendant claims the fingerprinting portion was state-mandated and was required to

work in the industry, and was thus not for the benefit of the employer and not compensable. *E.g.* WH Opinion Letter, 1997 WL 998038 (Sept. 15, 1997) (state-mandated training to obtain insurance agent license was for the benefit of the employee and not compensable). Defendant argues the time that it took to issue individuals uniforms was *de minimis*.

### E.   The Parties Reached a Settlement.

The Parties recognized that the attorney's fees and costs that would be involved to continue litigating whether new hire orientation was compensable exceeded what it would cost to pay the full value of the time spent in the new hire orientation by the Class Members. Accordingly, in order to avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement totaling $240,000, which is memorialized in the Stipulation of Settlement submitted with the Parties' Motion for Preliminary Approval. (Docket No. 70). The Settlement consists of payment of back wages to the approximately 1,275 Class Members totaling $100,000; payments to the Named Plaintiffs totaling $15,000; and a payment to Plaintiffs' attorneys for fees and costs in the amount of $125,000. The Parties arrived at these amounts through arms-length negotiation based on underlying data exchanged in advance of the mediation session. The basis for the settlement amounts is as follows:

### 1.   Back Wages ($100,000.00 to Class Members)

Back wages were computed by multiplying the number of Class Members (x) the number of hours of new hire orientation (x) the minimum wage in effect at that time (x) 2 for liquidated damages for the FLSA claim, and (x) 1.25 for the PMWA claim. Unclaimed individual settlement payments will revert to Class Members and be distributed on a pro-rata basis.

4

### a.     Number of Class Members (1,275)

Defendant's records showed that approximately 1,275 individuals were hired, and thus attended new hire orientation, in Pennsylvania between October 15, 2008 (date on which the Parties have agreed to toll the statute of limitations) and January 7, 2010 (when Securitas alleges it began paying for new hire orientation).

The Parties recognized that only a portion of the 1,275 individuals would likely opt in to assert an FLSA claims.  In order to put this claim to rest fully and finally and to provide the broadest relief possible to the Class Members, the Parties agreed that the First Amended Complaint would be amended to drop the uncertified claims and add a Rule 23 state law claim alleging violation of the Pennsylvania Minimum Wage Act, for purposes of settlement only, and that Defendant would pay the PMWA claim for new hire orientation claim on an opt-out basis under Federal Rule of Civil Procedure 23.

The Parties agreed that the opt-out class for the state law claim would be retroactively tolled as of October 15, 2011, for purposes of settlement only, such that the state and FLSA classes would be coextensive.  The FLSA measure of damages covers what would be awarded under the Pennsylvania Minimum Wage Act, which does not provide for liquidated damages but instead provides for a lesser penalty of 25% of back wages.  Those who do not opt in as to the FLSA claim will be paid the PMWA measure of damages plus a pro-rata portion of any unclaimed settlement payments.

### b.     Hours In New Hire Orientation (5.4567 hours)

Because Securitas did not consider the time spent in new hire orientation to be compensable, it did **not** record the hours spent in training or pay for those hours.  However, according to branch office personnel who ran the orientation and analysis of payroll records for the post-January 2010 period when Securitas began paying for the new hire orientation, the

entire session took an average of 5.38 hours. Where the time spent exceeded this number, it was because the individual needed more time to complete the videos and testing or review the material with branch office personnel. For purposes of settlement, slightly more than the post-January 2010 average number of hours was used: 5.4567 hours.

### c. Pay Rate For New Hire Orientation (Minimum Wage)

Under the FLSA, the Company's legal obligation is to pay minimum wage for all hours worked in any given workweek and to pay overtime for any hours over 40. The minimum wage effective in Pennsylvania under state and federal law was $7.15 from October 2008 to July 23, 2009, and $7.25 from July 24, 2009 to January 2010.

Because the time spent was not recorded or paid prior to January 2010, the actual date of any given Class Member's new hire orientation can only be pinpointed by pulling his or her personnel file to find the date on which certain new hire paperwork was filled out and signed. Unfortunately, the date cannot be ascertained by reference to data in any company database. The cost of locating, pulling and reviewing over 1,200 personnel files was prohibitive relative to the value of the claims at stake.

Accordingly, the Parties agreed that a fair compromise position for both the minimum wage and overtime claims was to pay the full minimum wage in effect at the time of hire for 5.4567 hours to all who attended new hire orientation during the statutory period.

### d. Liquidated Damages Or PMWA Penalty (100% Or 25% of Back Wages)

Liquidated damages are computed as 100% of back wages. 29 U.S.C. §216(b) (liquidated damages are "an additional equal amount" of unpaid minimum wages or unpaid overtime compensation). As to the PMWA claim, the penalty is computed as 25% of back wages.

### 2. Payments to Named Three Plaintiffs ($15,000)

The second element of the Parties' settlement is payment to the Named Plaintiffs. Courts may make separate awards to class representatives in recognition of their risks, time expended, and benefits to the class. *See In Re US Bancorp Litig.*, 291 F.3d 1035, 1037 (8th Cir. 2002), cert. denied 537 U.S. 823 (2002); *White*, 822 F. Supp. at 1406.

The role of the Named Plaintiffs in this litigation was crucial. Each sacrificed their time to prosecute this lawsuit on behalf of their fellow current and former employees. Each reviewed and approved the Complaint. Each met, conferred and corresponded with Plaintiffs' counsel on a regular basis. Each submitted to extensive interviews, produced records and documents, and provided invaluable information and assistance to Plaintiffs' Counsel without which they could not have brought this matter to a successful conclusion. Each responded to written discovery and were actively involved in subsequent discussions that shaped and finalized the settlement and proposed plan of allocation. The $5,000 payment to each of them consists of back pay for all their wage and hour claims and compensation for their work on behalf of the class.

### 3. Plaintiff's Attorneys' Fees and Costs ($125,000).

The Parties vigorously contested the portion of Plaintiff's attorney's fees that should be paid under the settlement.

In the end, after hours and rates were provided and intense negotiation, the Parties agreed to $125,000 in attorney's fees, subject to Court approval. The Parties believe that this is a fair compromise. As part of the Final Approval process, Plaintiffs are submitting their motion for attorney's fees not to exceed $125,000.00 under separate cover.

### F. The Settlement

As part of the settlement, the Parties prepared the Stipulation of Settlement and exhibits thereto which included the other documents necessary for the Court approval and notice

7

processes. (See Motion for Preliminary Approval, Docket No. 70). In order to enable the broadest settlement possible for the class, the Parties stipulated to the filing of a Second Amended Complaint dropping uncertified claims and asserting a state law new hire orientation claim and seeking certification under Fed. R. Civ. P. 23. The Parties arrived at stipulations, set forth in the Stipulation of Settlement, that each of the elements of Rule 23 are met with respect to the new hire orientation claim and agree that this claim should be certified for purposes of this settlement.

On July 11, 2012, the Court granted the Parties' Motion for Preliminary Approval, approved the notice and claim form to be sent to the class and granted leave to file the Second Amended Complaint. (Docket No. 71). The Court initially set the Final Approval Hearing for September 28, 2012, but the date was re-set to November 6, 2012 at 10:00 a.m. in order to facilitate the required notices under the Class Action Fairness Act.

### G. After Notice No Objections Or Requests For Exclusion Were Received.

As detailed in the Declaration of the Claims Administrator filed herewith, the Notice of Settlement and Claim form was sent to the class within 10 days of the Court's Order granting preliminary approval. (Tittle Decl., ¶ 8). The Claims Administrator processed the responses as provided for in the Stipulation of Settlement approved by the Court, including skip tracing and re-mailing undeliverable notices. (*Id.*, ¶¶ 6-9). In response, of the 1,188 class members located, 189 submitted claim forms opting in to the FLSA claim, no one submitted a request to opt out of PMWA settlement (except those participating in the higher dollar value FLSA settlement), and no one submitted an objection to the terms of the settlement. (*Id.*, ¶¶ 11-13). Accordingly, 100% of the 1,188 class members located will participate either in the FLSA settlement or the PMWA settlement.

8

The Claims Administrator has computed payments to be made to the Class, and established a fund out of which the payments will be made following final approval of the settlement. (*Id.*, ¶ 15 & Ex. C). Securitas will make the payments to the named Plaintiffs and Plaintiffs' attorneys directly.

## III.  LEGAL AUTHORITY

### A.  The Court Should Approve The Settlement Of Plaintiffs' FLSA Claims Because The Settlement Is Fair And Reasonable.

An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). With respect to a court-authorized settlement, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether a settlement is fair and reasonable, courts have considered factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, Case No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n. 6 (11th Cir. 1994)); *see also Trinh v. JPMorgan Chase & Co.*, Case No. 07-CV-01666 W(WMC), 2009 WL 532556 (S.D. Cal. March 3, 2009). "When considering these

9

factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, *3 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *King*, 2007 WL 737575 *3 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (other internal citations omitted)).

The Parties' settlement is fair and reasonable and meets all of the factors considered by courts:

1. The settlement was not fraudulent or collusive. The settlement was the result of a highly contested, arms-length negotiation prior to and during a full-day mediation with Hon. Diane Welsh, a skilled mediator with JAMS. The terms of the settlement represent a true compromise by both sides: it provides relief to the Class Members, including liquidated damages and penalties, and required Plaintiffs' counsel to take a significant discount on their attorneys' fees. Importantly, after receiving notice, no class member requested exclusion or objected to the settlement. Accordingly, the settlement was not fraudulent or collusive.

2. The settlement appropriately factored in the complexity, risk, expense, and likely duration of the litigation. The Parties recognized that dollar value exposure for back wages on the new hire orientation claim was less than the attorney's fees that would be required to litigate the claim. The Parties also recognized the risks inherent in proceeding with the litigation in light of each Party's arguments on the merits of the claim.

3. The settlement was appropriate at this stage of the proceedings and given the amount of discovery completed. Defendant provided videos, agendas and other documents regarding the content of new hire orientation, produced its Region Vice President of Human Resources for

deposition to answer Plaintiffs' questions regarding new hire orientation, produced payroll records showing the number of individuals hired and their first week of pay during the Class Period, and also produced timesheets and payroll records demonstrating the hours paid for new hire orientation post-January 7, 2010. The Parties thus had the information necessary to assess the compensability of new hire orientation program during the relevant time period, as well as the possible exposure for back pay.

4. In Defendant's view, the settlement overly estimates the strength of the plaintiff's case and the probability of success on the merits; however, Defendant was able to negotiate an appropriate discount on Plaintiffs' attorney's fees and by settling, was able to avoid incurring additional defense fees and costs.

5. The settlement covers the range of possible recovery. The payments to the Class Members are significant, and include liquidated damages.

6. Attorneys for the Parties, who are experienced in wage and hour collective and class actions, believe that settlement is fair and reasonable. Further, no class member requested exclusion or filed an objection.

For all of these reasons, the Parties jointly request the Court to grant final approval of the Settlement.

### B. The Court Should Approve The Settlement Of Plaintiffs' State Law PMWA Claim Under F.R.C.P. 23(e) Because It Is Fair, Reasonable And Adequate.

Rule 23(e) of the Federal Rules of Civil Procedure requires that cases brought as class actions may only be settled, compromised or dismissed upon a court finding that it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). Rule 23 requires courts to independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished. *In re General*

*Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Generally, court approval of proposed class action settlement is accomplished in a two-step process. First, the parties submit the proposed terms of the settlement and the court makes a preliminary evaluation of fairness. Second, if the preliminary evaluation of the proposed settlement does not disclose ground to doubt the basic fairness of the proposed settlement or other obvious deficiencies, the court should direct notice be given to the class members of the formal fairness hearing, at which time arguments and evidence may be presented in support of or in opposition to the proposed settlement. NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002); MANUAL FOR COMPLEX LITIGATION, § 30.41 (3rd ed.).

In connection with final approval, courts in the Third Circuit apply a nine-factor test to assess whether a settlement is fair, reasonable, and adequate as required by Rule 23. The factors include: (1) the complexity and duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining a class action, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement in light of the best recovery, and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *In re General Motors Corp.*, 55 F.3d at 785. Other factors may also be considered, for example: (10) whether class members are accorded the right to opt out of the settlement, (11) whether any provisions for attorneys' fees are reasonable; (12) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). However, the court is not charged with

conducting a detailed or exhaustive analysis of the proposed settlement. Rather, its task is to determine whether the proposed settlement is within the range of reasonableness:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a Formal Fairness Hearing, at which evidence may be presented in support of and in opposition to the settlement.

MANUAL FOR COMPLEX LITIGATION, §30.44 (2d ed. 1985).

The Parties Settlement is fair, reasonable and adequate under the criteria that the Court will consider at the Final Approval Hearing.

1. The settlement is fair, reasonable and adequate given the complexity and duration of the litigation. The settlement provides recovery to the Class Members without the risks inherent in continuing what would prove to be lengthy litigation and the possibility that Defendant would prevail on its arguments that new hire orientation was not compensable time.

2. The Class reacted favorably to the settlement, with no requests for exclusion or objections filed. This is likely because the settlement provides them with recovery on the new hire orientation claim.

3. The settlement is fair, reasonable, and adequate at this stage of the litigation. The settlement provides recovery after sufficient discovery, without the risk inherent in continuing the litigation.

4. The settlement is fair, reasonable and adequate given the risks that Plaintiffs will not be able to establish liability. Defendant alleges it has a strong argument that the video, testing, and paperwork portion of the new hire orientation were the final part of its screening process and that the fingerprinting portion was not compensable because it was state-mandated to work in the industry. Accordingly, the settlement is more than fair, reasonable and adequate to the Class.

13

5. The settlement is fair, reasonable and adequate given the risks of establishing damages because were Defendant to pull any individual Class Member's personnel file and pinpoint the date of new hire orientation and pull the payroll information for the Class Member's first week of work, the Class Member may recover nothing. Alternatively, it may be that even if there was a minimum wage violation, the back wages due would only be the difference between what was paid per hour and minimum wage (x) the number of hours, which is less than the recovery offered in the Settlement Agreement – full minimum wage (x) 5.4576 hours (x) 2 for liquidated damages.

6. The settlement is fair, reasonable and adequate given the risks of maintaining a class action. The settlement properly takes into account the risk of the new hire orientation claim being certified as a class action given the Court's prior order granting conditional certification to the FLSA claim.

7. The settlement is fair, reasonable and adequate given the ability of the defendant to withstand a greater judgment. The cost of defense was appropriately considered in settling this matter.

8. The settlement is within the range of reasonableness in light of the best recovery. The settlement provides significant relief to the Class Members and enables them to avoid further legal fees and costs, a lengthy legal dispute, and the risk of an adverse determination on liability or damages.

9. The settlement is in the range of reasonableness in light of all the attendant risks of litigation. As discussed above, Class Members are able to secure significant recovery, while avoiding the risks inherent in continued litigation.

10. Class members had the option to decline to opt in to the settlement with respect to the FLSA claim and/or opt out of the settlement with respect to the PMWA claim if they are not happy with the settlement terms. Those who failed to opt in to the FLSA settlement received the PMWA settlement unless they filed a claim for to opt out of the PMWA settlement, and nobody filed a claim for to opt out of the PMWA settlement. Nor did anybody file and objection to the settlement.

11. The attorneys' fees portion of the settlement is reasonable given the results obtained, the hours spent, and the rates previously approved by this Court, as explained in more detail in the unopposed motion for attorney's fees filed herewith.

12. The Parties have agreed to a claims process that is more than reasonable. Reasonable efforts were used to locate class members, a toll free number was established to handle any inquiries about the process, the claims administrator has conducted an orderly notice period, and the claims administrator has tallied the responses, and computed the settlement amounts due.

## IV. CONCLUSION

The Parties respectfully request that this Court grant their motion for final approval and enter an order dismissing the case as to all parties and class members with prejudice.

Dated: October 23, 2012                                    Respectfully submitted,

By: /s/ David J. Cohen                          By: /s/ Martha Keon
David J. Cohen, Esq.                                Martha Keon, Esq.
Kolman Ely, P.C.                                    Littler Mendelson, P.C.
414 Hulmeville Avenue                               1601 Cherry Street, Suite 1400
Penndel, PA 19047                                   Philadelphia, PA 19102-1321
(215) 750-3134                                      (267) 402-3050
dcohen@kolmanlaw.net                                mkeon@littler.com

*Counsel for Plaintiffs*                            *Counsel for Defendant*

15